J. S03012/16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| WILLIAM M. AMATO, | : | No. 738 EDA 2015 |
| | : | |
| Appellant | : | |

Appeal from the Judgment of Sentence, January 21, 2015,
in the Court of Common Pleas of Montgomery County
Criminal Division at No. CP-46-CR-0008405-2013

BEFORE:  FORD ELLIOTT, P.J.E., OTT AND JENKINS, JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:        **FILED MARCH 03, 2016**

William M. Amato appeals from the judgment of sentence of January 21, 2015, following his conviction of driving under the influence ("DUI") -- general impairment, 75 Pa.C.S.A. § 3802(a)(1), DUI -- highest rate of alcohol, 75 Pa.C.S.A. § 3802(c), and summary traffic offenses.  We affirm.

The trial court has set forth the history of this matter as follows:

> On July 20, 2013 at approximately 9:40 p.m., Lower Moreland Patrol Officer Christopher Daniel, a nine year veteran of the force, observed a silver Acura sedan driving erratically.  It was later discovered that this vehicle was driven by Appellant. Although one car was in between Officer Daniel and Appellant, the hilly terrain gave Officer Daniel a mostly unobstructed view of Appellant's car.
>
> While following [Appellant], Officer Daniel noticed Appellant's brake lights turning on and off

more than usual. Appellant's car did not maintain a consistent speed and followed the car in front too closely. The right side of the road has a narrow shoulder and is abutted by a ravine. Officer Daniel saw Appellant's vehicle cross the right fog line twice, invoking his concern for Appellant's safety as well as the safety of nearby drivers. Although Officer Daniel's view of Appellant's car tires was partially obstructed, he could determine that Appellant was over the fog line based on the vehicle's physical location, relative to the fog line.

Suspecting that Appellant's erratic driving and inability to maintain a safe distance was due to intoxication, Officer Daniel conducted a traffic stop. Upon speaking with Appellant, Officer Daniel observed signs of intoxication. Appellant was subsequently arrested for DUI. Officer Daniel read Appellant the **O'Connell** Warnings[Footnote 1], then transported Appellant to Holy Redeemer Hospital for chemical testing. The results of the blood test showed that Appellant's blood alcohol concentration ("BAC") was .160 %.

[Footnote 1] The phrase "**O'Connell** Warnings" means the officer must specifically inform a motorist that his driving privileges will be suspended for one year if he refuses chemical testing, and that the rights provided by the United States Supreme Court's decision in **Miranda v. Arizona**, 384 U.S. 436 (1966), do not apply to chemical testing. **See Commonwealth, Dept. of Transp., Bureau of Traffic Safety v. O'Connell**, 555 A.2d 873, 877-78 (Pa. 1989); **See also Commonwealth, Department of Transportation v. Ingram**, 648 A.2d 285, 290 (Pa. 1994); **Commonwealth, Department of Transportation v. Scott**, 684 A.2d 539, 540-41 (Pa. 1996).

On April 24, 2014, Appellant filed a Motion to Suppress, which this Court heard on September 4, 2014. Appellant's Motion to Dismiss [sic] was denied on October 8, 2014.

On January 21, 2015, a non-jury trial was held. Appellant stipulated to the admission of all of [the] Commonwealth['s] evidence and presented no evidence on his behalf. This Court found Appellant guilty on all counts and sentenced him to undergo imprisonment for ninety days to five years.[1]

On January 30, 2015, Appellant filed a post sentence motion, which this Court denied on February 24, 2015. This appeal followed.

Trial court opinion, 4/28/15 at 1-2.

On March 12, 2015, the trial court directed appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b) within 21 days; appellant timely complied on March 23, 2015. The trial court issued a Rule 1925(a) opinion on April 28, 2015.[2]

---

[1] Appellant received a sentence of 90 days to 5 years' imprisonment on Count 2, DUI -- highest rate of alcohol. (Notes of testimony, 1/21/15 at 11.) Count 1, DUI -- general impairment, merged for sentencing purposes. (**Id.** at 10-11.) Appellant received a fine of $250 on the summary offenses. (**Id.** at 11.)

[2] On April 1, 2015, this court issued a rule to show cause why the appeal should not be quashed as interlocutory, since, according to the criminal docket, the trial court had not imposed judgment of sentence. Appellant filed responses on April 13, 2015, and May 1, 2015, asserting that he was sentenced on January 21, 2015, following the stipulated non-jury trial, and that the trial court granted his request for **supersedeas** pending appeal. Timely post-sentence motions were filed on January 30, 2015, and denied on February 24, 2015. Appellant attributed the error to incorrect docketing by the clerk's office. After review of the record and appellant's responses to this court's show cause order, it does appear that appellant was sentenced on January 21, 2015, to 90 days to 5 years' imprisonment and that the trial

Appellant has raised the following issues for this court's review:

> 1. Did the Trial Court err when it denied Appellant's motion to suppress evidence when the arresting officer's testimony at the suppression hearing was not supported by the clear footage from his patrol vehicle's dash cam and that his testimony, even if believed, did not support probable cause for a motor vehicle stop?
>
> 2. Did the Trial Court err in precluding the Appellant from questioning the Commonwealth's only witness, the arresting officer, regarding any potential fabrication of his testimony?

Appellant's brief at 5.[3]

> Our standard of review where an appellant appeals the denial of a suppression motion is well-established: we are limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. We may consider the evidence of the witnesses offered by the prosecution, as verdict winner, and only so much of the defense evidence that remains uncontradicted when read in the context

_____

court granted appellant's request for a stay of his sentence pending the outcome of the instant appeal. (Notes of testimony, 1/21/15 at 11-12.) We could not locate appellant's sentencing order anywhere in the certified record, nor does appellant's judgment of sentence appear on the docket. However, this appears to have been an oversight. Therefore, we will not quash the appeal as interlocutory.

[3] Two additional issues raised in appellant's Rule 1925(b) statement and addressed by the trial court in its opinion, challenging the weight and sufficiency of the evidence to support his conviction of count 2, DUI -- highest rate of alcohol, have been abandoned on appeal.

of the record as a whole. We are bound by facts supported by the record and may reverse only if the legal conclusions reached by the court below were erroneous.

*Commonwealth v. Scott*, 878 A.2d 874, 877 (Pa.Super.2005), *appeal denied*, 586 Pa. 749, 892 A.2d 823 (2005) (citations omitted).

*Commonwealth v. Smith*, 904 A.2d 30, 35 (Pa.Super. 2006).

In Pennsylvania, the authority that addresses the requisite cause for a traffic stop is statutory and is found at 75 Pa.C.S.A. § 6308(b), which provides:

**(b)** **Authority of police officer.--**Whenever a police officer is engaged in a systematic program of checking vehicles or drivers or has reasonable suspicion that a violation of this title is occurring or has occurred, he may stop a vehicle, upon request or signal, for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title.

75 Pa.C.S. § 6308(b). In *Commonwealth v. Feczko*, 10 A.3d 1285 (Pa.Super. 2010) (*en banc*), this Court, consistent with our Supreme Court's clarification of constitutional principles under the Fourth Amendment and Article I, Section 8 of the Pennsylvania Constitution, stated with respect to § 6308(b):

In light of our Supreme Court's interpretation of the current language of Section 6308(b), we are compelled to conclude that the standards concerning the quantum of cause necessary for an

officer to stop a vehicle in this Commonwealth are settled; notwithstanding any prior diversity on the issue among panels of this Court. Traffic stops based on a reasonable suspicion: either of criminal activity or a violation of the Motor Vehicle Code under the authority of Section 6308(b) must serve a stated investigatory purpose. (footnote and citation omitted).

. . . .

Mere reasonable suspicion will not justify a vehicle stop when the driver's detention cannot serve an investigatory purpose relevant to the suspected violation. In such an instance, "it is encumbent [sic] upon the officer to articulate specific facts possessed by him, at the time of the questioned stop, *which would provide probable cause to believe that the vehicle or the driver was in violation of some provision of the Code.*" [**Commonwealth v.**] **Gleason** [567 Pa. 111], 785 A.2d [983,] 989 [(Pa. 2001)] (citation omitted)[, superseded by statute, Act of Sept. 30, 2003, P.L. 120, No. 24, § 17 (amending 75 Pa.C.S.A. § 6308(b))].

*Id.* at 1290-1291 (emphasis added in *Gleason*). Accordingly, when considering whether reasonable suspicion or probable cause is required constitutionally to make a vehicle stop, the nature of the violation has to be considered. If it is not necessary to stop the vehicle to establish that a violation of the Vehicle Code has occurred, an officer must possess probable cause to stop the vehicle. Where a violation is suspected, but a stop is necessary to further investigate whether a violation has occurred, an officer need only possess reasonable suspicion to make the stop. Illustrative of these two standards are stops for speeding and

DUI. If a vehicle is stopped for speeding, the officer must possess probable cause to stop the vehicle. This is so because when a vehicle is stopped, nothing more can be determined as to the speed of the vehicle when it was observed while traveling upon a highway. On the other hand, if an officer possesses sufficient knowledge based upon behavior suggestive of DUI, the officer may stop the vehicle upon reasonable suspicion of a Vehicle Code violation, since a stop would provide the officer the needed opportunity to investigate further if the driver was operating under the influence of alcohol or a controlled substance. **Compare Commonwealth v. Enick**, 70 A.3d 843, 846 (Pa.Super. 2013) (probable cause required to stop for failure to drive on right side of roadway), **Commonwealth v. Brown**, 64 A.3d 1101, 1105 (Pa.Super. 2013) (probable cause required to stop for failure to use turn signal), **Commonwealth v. Busser**, 56 A.3d 419, 424 (Pa.Super. 2012) (probable cause required to stop for failure to yield to emergency vehicles), and **Feczko**, 10 A.3d at 1291 (probable cause required to stop for failure to maintain lanes), with **Commonwealth v. Holmes**, 609 Pa. 1, 14 A.3d 89, 96–97 (2011) (reasonable suspicion sufficient to stop to investigate front windshield obstruction), **Commonwealth v. Bailey**, 947 A.2d 808, 812–14 (Pa.Super. 2008) (reasonable suspicion sufficient to stop to investigate faulty exhaust system or muffler); **see also Commonwealth v. Landis**, 89 A.3d 694, 703 (Pa.Super. 2014) (noting that where trooper stopped motorist for failing to drive within a single lane--and not to investigate possible DUI--he needed probable cause to stop). With these guiding principles and examples in mind, we now turn to the examination of the Vehicle Code violation subject of this appeal.

**Commonwealth v. Salter**, 121 A.3d 987, 992-993 (Pa.Super. 2015).

"[P]robable cause does not require certainty, but rather exists when criminality is one reasonable inference, not necessarily even the most likely

inference." *Id.* at 994, quoting *Commonwealth v. Spieler*, 887 A.2d 1271, 1275 (Pa.Super. 2005) (quotation omitted).

> Reasonable suspicion requires only that the officer have sufficient knowledge to believe a traffic violation has occurred in order to conduct a brief investigative stop. *See Feczko*, 10 A.3d at 1291 (noting an officer may, consistent with § 6308(b), perform a traffic stop "to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of [the Vehicle Code]").

*Id.*

Instantly, Officer Daniel had sufficient reasonable suspicion that appellant was driving under the influence to justify pulling him over for further investigation. Officer Daniel testified that he has nine years' experience as a patrol officer and has investigated over one hundred DUI cases. (Notes of testimony, 9/4/14 at 3-5.) He observed appellant's vehicle drift over the fog line twice, including once where the passenger side wheels were completely over the line. (*Id.* at 6-7, 34.) Officer Daniel testified that in that particular area of Byberry Road, there is a very narrow berm:

> . . . there are various areas where it drops off suddenly, the shoulder is not present and you go from the fog line to maybe a foot or two of a little bit of asphalt and it drops off into a ravine of such so it is very dangerous in that particular area to be drifting to the right.

*Id.* at 7.

In addition, Officer Daniel testified that appellant was following the vehicle in front of him too closely and constantly flashing his brake lights:

"The brake lights continually activated brought my attention to the vehicle. I could tell as I was following this vehicle that it was too close to the vehicle in front of it." (*Id.* at 8.) Officer Daniel estimated that appellant was only 4-5 feet behind the vehicle in front of him. (*Id.* at 32.) Officer Daniel testified that with his training and experience, he suspected that appellant was under the influence of alcohol. (*Id.* at 16.) *See Commonwealth v. Angel*, 946 A.2d 115, 117-118 (Pa.Super. 2008) (state trooper possessed reasonable suspicion necessary to effectuate the traffic stop where he observed the appellant twice cross the fog line along his lane of traffic over a distance of one-half mile then move onto the exit ramp without using his turn signal), citing *Commonwealth v. Fulton*, 921 A.2d 1239, 1243 (Pa.Super. 2007), *appeal denied*, 934 A.2d 72 (Pa. 2007) (finding experienced officer who observed driver swerve over fog line three times within 30 seconds in dense fog possessed reasonable suspicion to stop vehicle).

Following the suppression hearing, the trial court determined that Officer Daniel possessed reasonable suspicion to stop appellant "based on his experience with DUI arrests, his training with detecting DUI signs and his specific articulable observations that [appellant] committed violations of the Motor Vehicle Code." (Opinion and Order, 10/8/14 at 5.) The trial court found Officer Daniel's testimony to be persuasive and credible:

> Officer Daniel saw [appellant] follow too closely and swerve out of his lane twice toward a dangerous

- 9 -

> ledge. Officer Daniel also had the opportunity to view the behavior of at least two other drivers, who were able to safely navigate the roadway; this provided a point of comparison for [appellant]'s erratic driving. Officer Daniel credibly testified that due to [appellant]'s erratic driving, he suspected [appellant] was impaired.

*Id.* at 4. The trial court's conclusions are amply supported by the record, and we assign no error.[4]

To the extent appellant complains that Officer Daniel's testimony was not supported by the police vehicle dash cam footage, the trial court did not rely on the dash cam footage in denying appellant's motion to suppress:

> Officer Daniel's patrol vehicle was equipped with a video surveillance system that recorded a portion of the events that evening. This recording was introduced at the suppression hearing. Due to the poor lighting within the video, this court was unable to see or distinguish anything pointed out by either party except the existence of a ravine. This court finds the video admitted into evidence has no probative value. Therefore, this decision is based solely on the evidence presented.

*Id.* at 2. At any rate, appellant cross-examined Officer Daniel extensively regarding the dash cam footage, and any alleged inconsistencies were for the suppression court to resolve.

---

[4] Furthermore, Officer Daniel had probable cause to stop appellant for two separate Motor Vehicle Code violations, "Driving on roadways laned for traffic," 75 Pa.C.S.A. § 3309(1); and "Following too closely," 75 Pa.C.S.A. § 3310(a). Appellant was, in fact, found guilty of two counts of violating Section 3309(1).

We now turn to appellant's second and final issue: that the trial court erred in limiting his cross-examination of Officer Daniel regarding credibility. Pennsylvania Rule of Evidence 611, "Mode and Order of Examining Witnesses and Presenting Evidence," provides:

> **(a)** **Control by the Court; Purposes.** The court should exercise reasonable control over the mode and order of examining witnesses and presenting evidence so as to:
>
> (1)   make those procedures effective for determining the truth;
>
> (2)   avoid wasting time; and
>
> (3)   protect witnesses from harassment or undue embarrassment.

Pa.R.E. 611(a).    "The trial court also has considerable discretion in determining the scope and limits of cross-examination, and this Court cannot reverse absent a clear abuse of discretion or error of law." ***Commonwealth v. Boxley***, 838 A.2d 608, 615 (Pa. 2003), citing ***Commonwealth v. Birch***, 616 A.2d 977, 978 (Pa. 1992).

Apparently, Officer Daniel had been seated in the courtroom during defense counsel's argument on a prior, unrelated DUI case.   (Notes of testimony, 9/4/14 at 17.)   During cross-examination, counsel implied that Officer Daniel's testimony had somehow been tainted and/or that he had been coached by the prosecution:

Q.   You were here for the last hearing?

A.   Yes.

- 11 -

Q. You sat right there?

A. Yes.

Q. When I made my argument to the Judge and you heard about a case --

MS. MAC MASTER [(Alexandria MacMaster, Esq., assistant district attorney)]: Objection, Your Honor, this is irrelevant.

MR. REYNOLDS [(Coley O. Reynolds, Esq., defense counsel)]: It is absolutely relevant.

THE COURT: I don't know what he's going to say. I can't rule on your objection because I don't know where he is going with this.

BY MR. REYNOLDS:

Q. You heard my argument on the last case in regards to the Fesco [sic] case, right?[5]

A. I did.

Q. And the Assistant District Attorney told you I never heard of that, didn't she?

A. She did not.

Q. She said something about that case, didn't she? And you guys went outside --

MS. MAC MASTER: Objection.

THE COURT: Where are you going with this?

MR. REYNOLDS: I will withdraw that.

BY MR. REYNOLDS:

---

[5] Presumably, defense counsel is referring to this court's **en banc** decision in **Commonwealth v. Feczko**, **supra**.

Q.    You and the DA went outside and talked then?

A.    We did not.

Q.    Did you prep right in front here?

A.    We did not.

THE COURT:  I am sustaining the objection.  Officer, let's not say anything right now until I rule on this objection.  I don't know where you are going with this.  You all can have a sidebar discussion with me but I don't want to hear any more of this because I don't understand and you're not responding to my statements here.  So unless you will tell me, then the objection is sustained.

BY MR. REYNOLDS:

Q.    Did you meet with the District Attorney prior to testifying today?

MS. MAC MASTER:  Objection, Your Honor.

THE WITNESS:  I did.

MS. MAC MASTER:  Relevance.  I don't see what the point of this is.

THE COURT:  Let me see counsel.

(A conference was held in chambers, not reported.)

THE COURT:  Mr. Reynolds, you may resume your questioning.

MR. REYNOLDS:  I just want to note for the record that we had a conference in your chambers and at that time you precluded the Defense from asking any questions other than the following in regards to this; whether or not this Officer changed his testimony based on what he heard from my prior arguments.

BY MR. REYNOLDS:

Q.   Officer, did you change anything you were going to testify to today?

A.   No.

MR. REYNOLDS: Based on hearing that I would just note my objection, Your Honor, because there is a whole series of other questions I would want to ask on this.

THE COURT: So noted. Any other questions?

Notes of testimony, 9/4/14 at 17-20.

Initially, we note that the conference in chambers was not reported, so this court has no idea what appellant's offer of proof was, or what he was trying to prove with this line of questioning.

> It is Appellant's responsibility to supply this Court with a complete record for purposes of appeal, Pa.R.A.P. 1911, and we may not consider any information which is not contained in the certified record. **Smith v. Smith**, 431 Pa.Super. 588, 637 A.2d 622, 624 (Pa.Super. 1994) ('[A] failure by an appellant to insure that the original record certified for appeal contains sufficient information to conduct a proper review constitutes a waiver of the issue sought to be examined.'); **Commonwealth v. Quinlan**, 488 Pa. 255, 412 A.2d 494 (1980); **Commonwealth v. Buehl**, 403 Pa.Super. 143, 588 A.2d 522 (Pa.Super. 1991).

**Commonwealth v. Hallock**, 722 A.2d 180, 182 (Pa.Super. 1998).

At any rate, assuming the issue is preserved for review, we would nevertheless find no abuse of discretion. The trial court explains, "This Court viewed Counsel's line of inquiry as collateral to the present matter. In

the interests of relevance and judicial economy, this Court limited Appellant's questioning . . . ." (Trial court opinion, 4/28/15 at 6.)

Despite Officer Daniel's presence during defense counsel's argument during a prior, unrelated hearing, there is nothing in the record to suggest that Officer Daniel's testimony was tainted in any way or that he was told what to say by the prosecution. Appellant's line of questioning appears to be mere speculation and innuendo. Appellant's impertinent suggestion that Officer Daniel fabricated his testimony is without support in the record. In addition, appellant's ability to explore any inconsistencies between Officer Daniel's trial testimony and his prior reports was not curtailed by the trial court's ruling, as he suggests on appeal. (Appellant's brief at 18.) In fact, appellant cross-examined Officer Daniel thoroughly regarding any perceived differences between the affidavit of probable cause and his testimony. (Notes of testimony, 9/4/14 at 21-25.) There is no merit here.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/3/2016